HENRY C. BAKER, *as Receiver of the Elevator and Mill Company of Everest,* v. E. J. HARPSTER *et al.*

INCORPORATED COMPANY — *Contract — Officers Authorized to Execute Notes and Mortgage — Lien.* Where the officers of an incorporated company regularly enter into a written contract with its president, by the terms of which the president is to advance from time to time sums of money to carry on the business of the company, and is to have as security for said advances a first lien upon all of the property of the company, and under this agreement large sums of money are advanced by him for its use; and afterward said company is reorganized for the purpose of increasing the capital stock, with the understanding that the business of the new corporation is to be a continuation of the old, the new company receiving all the assets and assuming all the liabilities of the old, and the old officers are re-

elected officers of the new company, and the secretary of such company indorses upon said written contract under which advances were made a continuation thereof, and thereafter under such arrangement large sums of money are advanced to the company, with a full knowledge of all the officers and directors of such company, and payments on such advances are made from time to time by the company, and finally the officers of said company execute notes and mortgages to secure the same upon all the property of the corporation for the amount due from said corporation for such advances, and afterward the affairs of the corporation are placed in the hands of a receiver, who brings an action to cancel said notes and mortgages, *held,* that the officers of the new company, under the contract and facts stated, were authorized to execute the notes and create specific liens by mortgage, and that the said mortgages are a valid and a first lien upon the property of said company.

### *Error from Brown District Court.*

THIS action was brought by *Henry C. Baker,* receiver of the Elevator and Mill Company, of Everest, against the defendants. Trial at the January term, 1887, of the district court, and judgment was rendered in favor of the defendant, the State Savings Bank of St. Joseph, Missouri, and Benjamin F. Harpster. To reverse this judgment the plaintiff brings the case here; and the defendants Benjamin F. and E. J. Harpster file their cross-petition praying a reversal of the judgment. Trial by the court, which made special findings of fact, which, together with the pleadings and judgment, are brought here. The pleadings and findings of fact present substantially the following facts: That in March, 1882, the Farmers' Elevator and Mill Company was incorporated, with an authorized capital stock of $15,000. This company was composed of all of the defendants save the State Savings Bank, and included some others. Afterward the capital stock of the company was increased to $20,000. B. F. Harpster was its president and chief managing officer; W. H. H. Curtis was secretary, and J. F. Harpster was treasurer. B. F. Harpster was also the owner of a bank at Severance, Kansas, and J. F. Harpster was his chief clerk, and kept the treasurer's books of the corporation. In the course of the business of the corporation an arrangement was made between the officers of the

corporation and its president, by which he was to advance from his bank sums of money from time to time to carry on the business of the corporation. This agreement was made and spread upon the minutes by action of the board of directors, and was agreed to and accepted by the president, B. F. Harpster. This contract was as follows:

"OCTOBER 2, 1882.—The board of directors met at company's office, President B. F. Harpster in the chair. The following directors present: S. L. Ryan, Fred Harpster, A. D. Small, and W. H. H. Curtis. Minutes of previous meeting read and approved. On motion, the treasurer was instructed to borrow money for the company's use, to be paid out on orders of the parties entitled to give the same, (at a rate of interest not to exceed twelve per cent. per annum,) by overdrawing either by check or drafts on the bank of B. F. Harpster, in the city of Severance, Kansas, or by giving note or notes from time to time, signed by the secretary and treasurer of the company, and that the interest on said loan or loans be paid at the end of each and every month. All the property, real, personal or mixed, now or hereafter owned and belonging to the company, is hereby pledged to the said B. F. Harpster, banker aforesaid, for the sums of money which he may now or hereafter advance for the use of the company, pursuant to this arrangement; and that the said B. F. Harpster shall, at any and all times, be entitled to and shall have the first lien on all of said property to secure him in the payment of all such sums so advanced by him for the use of the company, and at any time he shall deem himself insecure he may on demand have all the grain shipped and sold, for the purpose of paying him such sums advanced; that he may have all grain or other farm products shipped in his name and for his benefit until the indebtedness of the company to him is paid in full. A copy of the minutes of this meeting, duly certified and signed by the secretary and vice-president of this company, and indorsed and agreed to in writing by the said B. F. Harpster, shall stand for and be binding as a contract in relation to all the matters herein.

"Approved.                    FRED. HARPSTER, *Vice-President.*
                    W. H. H. CURTIS, *Secretary.*

"I hereby agree to advance money and make loans to the Farmers' Elevator and Mill Company on the foregoing terms and conditions.

October 3, 1882.          B. F. HARPSTER, *Banker.*"

33—42 KAS.

"This agreement shall stand and be in force, and shall be binding upon the successor of the Farmers' Elevator and Mill Company; and the Elevator and Mill Company, which is the successor of the Farmers' Elevator and Mill Company, is to receive funds from B. F. Harpster upon the same terms and upon the same conditions. That the Elevator and Mill Company actually takes the place of the Farmers' Elevator and Mill Company.

W. H. H. CURTIS, *Secretary of both Companies.*"

Under this agreement B. F. Harpster advanced to the company and for it, over and above all receipts from the company and payments thereon, $57,974.32. This arrangement was known to nearly all the stockholders, and was within the knowledge or means of knowledge of all of them. This was the condition of the company on the 5th day of January, 1884, at which time it sought to buy an additional mill and elevator at Everest, Kansas. Desiring to take in one Henry Fluke as a stockholder, it was found that in order to do so the capital stock would have to be increased, and to do this, by mutual agreement of all parties, a new company was organized, called the Elevator and Mill Company, of Everest, Kansas, with a capital stock of $80,000, with the understanding that such new corporation was the continuation of the old Farmers' Elevator and Mill Company. The officers of the old company were elected officers of the new, and the property of the old company, consisting of an elevator and mill at Severance, in Doniphan county, and two elevators in Brown county, and one mill at Willis, and one at Everest, with grain and feed and other personal property of the value of thirty-five or forty thousand dollars, were transferred by the old company to the new corporation; and after the organization of this new company the secretary, who was secretary of the old company as well as the new, indorsed upon the contract under and by which B. F. Harpster, president, had advanced large sums of money to the old company, a continuation of hat contract with the new company. This was done without ny order or direction of the board of directors, but afterward hereunder B. F. Harpster advanced to the new company

in the course of its business about $60,000. That these advances were made was well known to the officers and directors of the corporation, and with their assent and understanding B. F. Harpster received the proceeds of the sale of a large part of the grains and small stuff, amounting to $61,-830, and some other credits which were given to the company, leaving the company indebted to him in November, 1884, in the sum of $50,000, at which time he desired to have some additional security; and for this purpose a special meeting of the directors was called — the board of directors at that time consisting of eight members. Notice was given and served only upon five of the directors, the other three having no notice or knowledge thereof. At the meeting so called the officers were directed by resolution to raise money by mortgage upon the property of the corporation to pay and secure the claim for money due the president. Under and by virtue of that resolution notes and mortgages were executed covering the amount due from the company to Harpster, being $50,000, and mortgages executed upon all the property of the company to secure the same. Shortly after these notes and mortgages were made and placed of record, suits were brought by Thomas C. Honnell, Henry Fluke, Jesse Henny, and Elijah N. Pugh, stockholders of the elevator and mill company, in the district court of Brown county, against the Elevator and Mill Company, of Everest, and B. F. Harpster and the other defendants as stockholders, for a dissolution of the corporation, for the appointment of a receiver, and for the cancellation of the notes and mortgages so executed to secure B. F. Harpster for the advances made by him to the corporation; in which action plaintiff in error Henry C. Baker was appointed receiver, who qualified and took charge of the property and business of the company, and as such receiver brought this action against the defendants to cancel the notes and mortgages so executed to Harpster. After the commencement of the action to have a receiver appointed, Harpster indorsed the notes to the State Savings Bank of St. Joseph, Missouri, as collateral, and afterward, and before September, 1885, received from time to time,

with interest due thereon, some $17,525.41; and for that reason the bank is made a party to this suit. Upon these findings and facts the court found and rendered judgment in favor of the bank for $17,525.41, and decreed a foreclosure of the mortgage for that amount, and also rendered judgment in favor of B. F. Harpster for $20,000 with interest, less said $17,525.41 due the savings bank.

The foregoing contains the essential facts that must govern this action.

*Waggener, Martin & Orr*, for plaintiff in error.
*W. D. Webb*, and *S. L. Ryan*, for defendants in error.

Opinion by CLOGSTON, C.: The claim made by the plaintiff in error, and upon which a reversal of this judgment is asked, is that the notes and mortgages executed to Harpster under a resolution of an informal meeting of the board of directors is absolutely void, not only in the hands of Harpster, but in the hands of the savings bank. First, for the reason that as to Harpster, he having full knowledge of the manner in which the special meeting of the board of directors was called, and the fact that only a part of the board had knowledge of the meeting, the notes and mortgages in his hands would be void; that, as the savings bank obtained no interest or possession of the notes and mortgages until after the commencement of the action to close up the corporation and to appoint a receiver, and for the cancellation of the notes and mortgages, it was bound to take notice of the fact of the pendency of the action, and could acquire no interest during the litigation. On the part of the defendants in error, Harpster and the savings bank, it is insisted that the court erred in rendering judgment for only $20,000, including the claim of the bank; that, under the finding of the court, a valid indebtedness existed for more than $50,000 from the company to him; that the mortgages were given to secure that sum, and that he was entitled to a judgment for the entire amount, and for a foreclosure of the mortgages upon the property of the company.

One fact over which there is no dispute, or which at least is conclusive so far as the court is concerned, is that the indebtedness actually existed between the corporation and its president, B. F. Harpster. It is also clear that the old indebtedness of some $57,974.32, due from the old company to him, was authorized by the board of directors, and that a first lien was given upon their property for its security. It is also shown that the advances of $60,000 made to the new company were made with the full knowledge of the directors of the new corporation, and that they were so made upon the strength of the old arrangement by which he was to have a lien upon the property for security. This much may fairly be said to be conclusively established by the findings of the court. If this be true, the new company, having received the proceeds and property of the old company, tacitly or mutually assuming its liabilities and allowing the business of the company to go on unchecked and unchanged, and advances to be made under the new arrangement as they were made under the old, without objection or complaint, is in no condition to deny the existence of a first lien upon its property for the payment of this claim; and if this be true, then it is of very little importance whether the mortgage be foreclosed and the property sold thereunder, or whether a judgment be rendered and such judgment be declared a first lien upon the property of the corporation. In either event, as far as the State Savings Bank of St. Joseph is concerned, it would give it complete protection. Whether it had knowledge, or was bound to take knowledge of the pendency of the action seeking to cancel and set aside the mortgage and notes, would be immaterial. Its security would be the same, a first lien upon the property of the corporation; and if this is true as to the bank, it would be equally true in the case of Harpster; he, having a first lien upon the property for the security of his claim, would be in no better condition by having a foreclosure of his mortgage than he would to have the judgment made a first lien thereon.

But we are not prepared to say that these mortgages are void even as to Harpster, and perhaps it is not necessary to

decide whether they are or not. The result will be the same in either event. The meeting of the directors was at least voidable, and upon this direct attack would have to fall; but beyond that, might not the officers of the corporation, knowing of this indebtedness to Harpster, carry out the spirit and intent of the contract under which the money had been furnished, and make the equitable contract and mortgage a specific or a legal one? If they could do that, then they had the power to execute the mortgages and notes — the evidences of that debt. It was creating no new lien upon the property, or placing the company under any greater obligations, nor was it placing its property in any new position or danger. They had power under the contract to make the notes, and these notes were to be secured by a first lien upon all the property of the company, and under all the findings made by the court we are compelled to hold that the officers of the company, under said contract and arrangement, had ample authority to execute the notes and mortgages sued on.

With this view the judgment of the court below must be set aside, and upon the findings of fact we feel called upon to direct such judgment as ought to have been rendered by the court below: that the State Savings Bank of St. Joseph, Missouri, have and recover a judgment against the plaintiff for the sum of $17,525.41, with interest at the rate of ten per cent. per annum from the 20th day of February, 1887; that B. F. Harpster have and recover a judgment against the plaintiff for the sum of $50,000, less the judgment of the State Savings Bank of St. Joseph, Missouri; and that this judgment bear interest at the rate of twelve per cent. per annum from the 7th day of November, 1884, and the mortgages to secure said sum be foreclosed.

By the Court: It is so ordered.

All the Justices concurring.